<em>Judgment affirmed.</em>

---

## The State <em>v.</em> Jeremiah McCoy and others.

It is unnecessary in an indictment for murder to state the length, breadth, or depth of the wounds. The term *mortal* is indispensable in describing the bruise or wound ; but when so described, an adequate cause of death is assigned, which will be supported by evidence of any deadly wound or bruise. It has never been required to prove either a wound or bruise as laid.

Where an indictment for murder alleges the infliction of " several mortal bruises and wounds in and upon the right side of the head, also in and upon the stomach, back and sides" of the deceased, it is a sufficient description both of the character and locality of the wounds.

The Legislature in providing by the sec. 33 of the stat. of 4 May, 1805, that " all the crimes, offences, and misdemeanors hereinbefore named, shall be taken, intended and construed according to and in conformity with the law of England ; and the forms of indictment (divested however of unnecessary prolixity,) the method of trial, the rules of evidence, and all other proceedings whatsoever in the prosecution of the said crimes, offences and misdemeanors, changing what ought to be changed, shall be, except as is by this act otherwise provided for, according to the said common law," must be understood as having adopted that system of law as it existed in 1805, modified, explained and perfected by statutory enactments, so far as those enactments are not inconsistent with the peculiar character and genius of our institutions.

Where the mortal stroke by which a murder was effected, was given in one parish and the death occurred in another parish in this State, the crime must be prosecuted in the parish in which the death occurrd. But where the mortal stroke was given in this State, but the death occurred in another State, the crime may be inquired of in the parish where the stroke was inflicted.

Appeal from the District Court of Pointe Coupée, *Deblieux*, J.

*Preston*, Attorney General, for the State.

*Boyle* and *Ratliff*, for the appellants.

King, J. The defendants, Jeremiah McCoy, Warren Coving-

ton, and John Pough, were indicted, with Peter Cade, who does not appear to have been tried, for the murder of James Leonard Hornsby, in the parish of Pointe Coupée. The indictment alleges the mortal strokes to have been given in the parish of Pointe Coupée, in the State of Louisiana, on the 26th day of February, 1843, and the consequent death to have occurred in Adams county, in the State of Mississippi, on the 15th day of March following.

The defendants were tried in the parish of Pointe Coupée, convicted, and sentenced by the court, each to a fine of $100, and to suffer imprisonment, at hard labor, for the term of one year. From this judgment they have appealed, asking that it be reversed, and that they be finally discharged from the prosecution, for the following alleged errors, apparent on the face of the record, viz :

" 1st. The indictment is vague and indefinite in not stating any distinct mortal wounds to have been given, on any distinct portion of the body of the deceased ; nor is any wound, mortal or otherwise, described with the necessary legal averments of length, depth," and breadth.

" 2d. From the language of the indictment, alleging that the divers wounds and bruises, and mortal wounds were inflicted 'in the parish of Pointe Coupée, and that the death of James Leonard Hornsby took place in Adams county, in the State of Mississippi, it is apparent that the court, *a qua*, had no jurisdiction of the case against the accused, and could proceed to pass no judgment on the verdict of the jury."

These will be considered in their order.

It was formerly considered necessary, when the indictment alleged the death to have arisen from a wound which penetrated the skin, to describe its length, depth and breadth, except when it passed through the body, or a limb was cut off, in order to show an adequate cause of death. It was otherwise, when the death was averred to have proceeded from a bruise, and it was never required to prove either the wound or bruise as laid. It is now settled, that it is not necessary, in an indictment for murder, to state the length, breadth or depth of the wounds. The term *mortal* is indispensable in describing the bruise or wound, and when so described; an adequate cause of death has been assigned, which will be supported by evidence of any deadly wound or bruise. Archbold Crim. Pl. 385. 6 Am. Com. Law, 20.

The indictment, in the present case, alleges " several mortal bruises and wounds in and upon the right side of the head, also in and upon the stomach, back and sides," which is a sufficiently distinct description both of their character and locality, and conforms with the most approved precedents. Archbold, 406.

The solution of the second question presented, depends upon the interpretation to be given to the act of 1805, which in-

troduced the common law in all criminal matters. This statute enacts; "That all the crimes, offences and misdemeanors therein named, (of which murder is one,) shall be taken, intended and construed according to and in conformity with the common law of England; and the forms of indictment, (divested, however, of unnecessary prolixity,) the method of trial, the rules of evidence, and all other proceedings whatsoever in the prosecution of the said crimes, offences and misdemeanors, changing what ought to be changed, shall be, except as is by this act otherwise provided for, according to the said common law."

At common law, murder, (a technical term which we have adopted, of known and settled meaning,) consists of the stroke and the consequent death. The concurrence of both being necessary for the consummation of the crime, when they occurred in different counties, the offence was incomplete in either. 1 East, 261. Hence doubts were entertained in relation to the proper venue in such cases. Both Hale and Hawkins say, that it was considered doubtful by some, whether the crime could be prosecuted in either county, but that the more common opinion was, that it could be inquired of in the county where the stroke was given. 1 Hale, 426. 1 Hawkins, 31, § 13.

To remove this doubt, and prevent a failure of justice, the act of 2 and 3 Edw. 6, was passed, which established the venue in such cases, in the county where the death took place. 1 East, 361.

We concur with the counsel in believing that the Legislature, in adopting the common law rules of proceeding, method of trial, &c., adopted the system as it existed in 1805, modified, explained and perfected by statutory enactments, so far as those enactments are not found to be inconsistent with the peculiar character and genius of our government and institutions. It will not be contended that those principles and rules of the common law, which had been abrogated and had ceased to exist in England, previously to 1805, were introduced by our statute. On the other hand, the system would have been incomplete and inefficient for the purposes contemplated by the Legislature, if they had not adopted the substitutes established by Parliament, for the rules of the common law which had been abolished. If this interpretation be incorrect, the Legislature have been guilty of the absurdity of enacting laws for the protection of life and property, without furnishing the means of bringing offenders to justice. We must presume, that it was intended to give effect to those laws, and to provide means for their enforcement, adequate to the ends which were in view.

With this construction of our act it may be considered, that by the statute of 2 and 3 Edw. 6, which is amendatory of the com-

mon law, it is as fully and definitively settled in this State, as though such a provision had been made by special legislative enactment, that the venue in such cases, is in the parish where the death occurred.

It is then urged, that the venue being thus established, the indictment in the parish where the stroke was given, was erroneous. The answer is, that the cases are not analogous. The death has occurred not in different parishes of the same State, but in a different State of the Union, as separate and distinct from Louisiana, for all the purposes of internal police and the punishment of violations of its penal laws, as Great Britain is from France ; and we find that such cases are not unprovided for by the system which we have borrowed.

At common law, it was doubtful whether the killing of one who died in England, of a blow received in foreign parts, and *vice versa*, could have been inquired of. Here again Parliament interposed, and put the question to rest, by passing the statute of 2d Geo. 2, which provides that, " when the stroke has been given in England and the death occurs out of England, or the reverse, that the killing may be inquired of in that part of England where either the *death or stroke* shall happen respectively." 1 East, P. C. 366.

The same reasons which have been urged for adopting the statute of Edw. 6, as part of our law in relation to venue, apply with equal force to the statute of Geo. 2. Both were passed for the purpose of explaining the common law, or of providing rules for the prosecution of criminals, in lieu of those which had grown into disuse, or which had been forgotten or become doubtful, or which experience had taught to be inconvenient or ineffectual. Under this statute the accused were properly indicted in the parish of Pointe Coupée.

An application was made to the District Court for a new trial, upon the ground that the verdict was contrary to the law and the evidence ; and further, that the judge erred in charging the jury, " that John Pough and Warren Covington, who were proved to have been hired by Peter Cade to cut wood for him, and lived and were domiciliated in his house, could not be considered as his servants, nor in a capacity which brought it within the provisions of the common law, so as to defend the person or property of their employer."

No exception was taken to the charge of the judge, at the time it was given to the jury. Nor does it appear from the record, that instructions were asked upon this point ; nor, in a shape which would authorize us to review it, that such a charge as that stated in the motion, was delivered.

There can be no doubt that the relation of master and servant

·may exist in this State, as at common law, with all the reciprocal ·obligations which grow out of that relation; It does not arise, however, from every contract by which an artificer and mechanic, or daily laborer, is temporarily employed to execute a specific piece of work, or to perform a specific service. The question is not presented in a form which renders it necessary, for the ·decision of the present case, to pursue inquiry upon this subject ·further.

*Judgment affirmed.*