The opinion of the court was delivered by
Manning, O. J.
The defendant was convicted under an indictment for incest, and was sentenced to imprisonment at hard labor for life.
The counsel for the prisoner asked the court to charge the jury, that the. crime of incest, not being defined by the criminal statutes of Louisiana, must bo defined and construed according to the common law of England as it existed at and previous to the enactment of the Act of 1805, and that as incest was not a crime at common law, or defined thereunder in 1805 and previously, no conviction could be had under the statutes of this State.
The court refused the charge, and the prisoner reserved a bill, and appealed.
It is noteworthy that this is the first prosecution for incest ever brought before this court, and so far as we are advised, the first one ever instituted in this State.
The act of May 4,1805, provides “ that all the crimes, offences, and misdemeanors herein before named, shall be taken, intended, and construed according to and in conformity with the common law of England; and that the forms of indictment, (divested however of unnecessary prolixity) the method of trial, the rules of evidence, and all other proceedings whatsoever in the prosecution of the said crimes, offences, and misdemeanors, charging what ought to be charged, shall be, except as is by this act otherwise provided -for, according to the said common law.” sec. 33.
Observe that the statute specifically directs how all the crimes, offences, and misdemeanors herein before named shall be taken, intended, and construed, and how the prosecution of the said crimes, etc. shall be *847 conducted. Among the many offences named in the preceding sections, for the commission of each of which a punishment is prescribed, that of incest is not to be found.
It has been held “that the legislature, in adopting the common-law rules of proceeding (procedure?), method of trial, &c adopted the system as it existed in 1805, modified, explained, and perfected by statutory enactments (of England) so far as those enactments are not found to be inconsistent with the peculiar character and genius of our government and institutions.” State v. M’Coy, 8 Rob. 545. But this decision, the soundness of which the profession have uniformly recognised, was digested by the then reporter with a different phraseoloy, having a more enlarged application than the text warrants, and Mr. Hennen has transcribed the Reporter’s version instead of that of -the opinion, and so has perpetuated the error. Eor it will be seen that the opinion speaks only of the common-law rules of procedure, method of trial, &c modified by England’s statutory enactments before 1805, as the system that was adopted by our act of that year, while the digest of the Reporter is, that the legislature in passing that act “must be understood as having adopted that system of law as it existed in 1805, modified” &c.
It was not decided by this court in that case that every act which was an offence at common law in 1805 was thereby made an offence here, nor is that a proper legal construction or reasonable intendment of the Act. On the contrary, with the manifest purpose of shutting out such construction, the Act of 1805 devotes thirty-two sections to providing how all the crimes should be punished which the legislature chose to visit with punishment, and as these crimes had specific designations in the common law, such as murder, rape, arson, etc. with well defined meanings, the act declares that those crimes, which had been already named in it, should be construed in conformity with the common law of England, that is to say, that the definitions of those crimes which were accepted or established by the common law, should be held as defining them here, and the mode of prosecution as to forms of indictment, method of trial, rules of evidence, and all other proceedings, shall be as at common law. But the Act does not adopt the whole Criminal law of England as it existed in 1805. It is only the definitions of those offences that are named in it, and the mode of procedure for criminal prosecutions, that were adopted by that Act. And it may be added that the omission from the re-enacted statute of the words ‘ herein before named,’ (Rev. Stats. 1870 see. 976), and the use of terms which embrace all crimes, does not affect the argument, as we shall see when we come to inquire whether this crime was one at common law, or by statute of England.
The 48th. section confirms this view of the intent of the legislature, *848 where it is enacted — “that as soon as may be, after the passing of this act, the governor shall cause to be drawn up and printed and promulgated in the English and French languages, an exposition and explanation of each-and every of the crimes and misdemeanors herein before mentioned, which are not herein precisely defined, and of the rules of evidence, the mode of trial, the forms of writs and indictments, and all other proceedings as they are directed to be had in the 33d section of this act.” It was a definition only of each and every of the crimes and misdemeanors mentioned in that Act that was required, plainly demonstrating that henceforward no others were denounced by the law — that no other acts than those which constituted the crimes, known to the English common law by the names used in the statute of 1805, should be visited henceforth with punishment.
This interpretation is put beyond the possibility of cavil by the fact that in 1817, an act was passed supplementary to that of 1805, creating new offences, the first mentioned among them being the abominable ■crime of incest.
The definition of the crimes, directed to be made by the act of 1805, was not made. The thought then in the mind of the legislature may have been the germ of Mr. Livingston’s Oode, and it is not the least of the many singular features of this subject, that although that Code was compiled many years after 1817, no mention is made in it of this crime.
The Attorney General contends- that incest was known as a crime to the common law of England long before 1805, and had often been punished — that while it is true, the Ecclesiastical Courts alone had jurisdiction of the offence, the common-law courts exercised the power of controlling and regulating the jurisdiction of the Ecclesiastical Courts in determining within what degrees of affinity and consanguinity the crime could be committed. 3 Blk. Com. 87. His argument therefore is that it was made a crime here by the Act of 1805.
But we have already seen that the Act of 1805 did not adopt all the ■crimes and misdemeanors known to the common law at that date, but •did set forth specifically the particular crimes and misdemeanors which henceforth should be deemed offences against the State, and incest was not one of the number.
It is not mentioned in the statutes until 1817, and then and ever since it appears with the brief denunciation — whoever shall commit the crime of incest shall, on conviction thereof, suffer imprisonment at hard labor for life. Rev. Stats. 1870. sec. 789.
But what is incest ? It has not, like murder, a fixed and definite meaning everywhere. An act that is incest in one country is not criminal at all in another country. Nay more, an act that is incest in one of our sister States is not so in all. No man may marry his brother’s *849 widow, or his wife’s daughter in Virginia, (Code, p. 470) nor within the Levitical degrees of consanguinity or affinity in Georgia. (Stat. Law p; 742), nor his son’s widow or uncle’s widow in Mississippi (Code, p. 494), but none of these marriages would be incestuous in our State, except as to some of the Levitical degrees.
The ‘ Digest of the Civil Laws in force in the territory of Orleans,’ published by authority in 1808, has this prohibition; — Marriage between persons related to each, other in the direct ascending or descending line is prohibited. This prohibition is not confined to legitimate children, but extends also to children born out of marriage. Among collateral relations, marriage is prohibited between brother and sister, whether of the whole or of the half blood, whether legitimate or illegitimate, and also between the uncle and the niece, the aunt and the nephew. Title IV c. II arts. 9,10. These prohibitions re-appear in our Civil Code (arts, 96, 97 new nos. 94, 95), and there is added the declaration that all other impediments on account of relationship or affinity are abolished, art. 98 new no. 96. So also our Code defines incestuous bastards to be those who are born of two persons who are relations within the degrees prohibited by law, (art. 202 new no. 183) and inflicts upon them disabilities, (arts. 217, 222, 914, 1475 new nos. 193, 204 with altered phraseology, 920i 1488.)
But here, is interposed the objection that these articles of the Civil Code relate only to the civil disabilities imposed upon the issue of marriages within the prohibited degrees. They do not impose criminal penalties upon the persons who thus marry. That Code of necessity, and from its nature and object, does not treat of crimes or their punishment.
It is therefore true that while our criminal statute attaches a punishment to the commission of incest, nowhere in our law is that crime defined. Shall it be said that the Act of 1805 does not define the crime of murder, and that no one will pretend that murder, for lack of such definition, is not a crime by our law ? The Act of 1805 does attach a penalty to the crime of murder, and does not to the crime of incest, and then provides that all the crimes named in the Act shall be taken and construed according to the common law of England. Is a crime not named in the Act to be construed according to that law? Criminal statutes must be construed strictly in favor of a party charged with their violation.
But we will consider the matter arguendo in the light most favorable to the State. Incest was not made a crime by the Act of 1805, bht it was by the Act of 1817. Since then the Act of 1805 provided, that all the crimes named in it should be construed by the common law of England, it may be assumed that whenever any act is thereafter made a crime by our law, it intends that such crime shall also be construed *850 according to that law, so that when incest was made criminal in 1817, we have but to revert to the common law definition to ascertain what it is.
Incest was neither defined nor punished by the common law of England at or before 1805. It was punished by statute in that country, and death was the penalty, and its definition was supplied by the canon law. Says Blackstone — “ in the year 1650 when the ruling power found it for their interest to put on the semblance of a very extraordinary strictness and purity of morals, not only incest and wilfuli adultery were made capital crimes, but also the repeated act of keeping a brothel br committing fornication were, upon a second conviction, made felony without benefit of clergy. But at the restoration, when men, from an abhorrence of the hypocrisy of the late times, fell into a contrary extreme of licentiousness, it was not thought proper to renew a law of such unfashionable rigour. And these offences have been ever since left to the feeble coercion of the spiritual courts, according to the rules of the canon law.” i Com. 65. England has again made incest a statutory offence since 1805.
If tnen we are to take and construe this crime as it was taken and construed by the common law of England in 1805, because our statute of that year directed that certain enumerated crimes should be thus construed, albeit incest is not.one of 'them, we are met by the want of any common law definition of it, although the canon law contained one, and if we shall take the canon law definition, because it was adopted by the common law, then an act which was punishable as incestuous by the law of England in 1805 was not punishable here.
The State at this point contends that the legislature passed the act punishing incest with reference to the well established and received definitions of that word in books of authority. That would be a dangerous rule to apply to the construction of criminal statutes. Our statute is unlike any other. It lacks that precision which should always characterize the creation of a crime, and the imposition of a punishment. Elsewhere, the statutes enact that whoever shall intermarry, or cohabit, being within the degrees of consanguinity within which marriage is prohibited, shall be deemed guilty of incest. Archbold, Grim. Frac. & PI. 615 — 8 et seq. Our statute is simply, ‘ whoever shall commit the crime of incest’ —a crime which has not a fixed and definite meaning of itself, which varies in different countries and even in different parts of the same country, so that an act, undeniably lawful in one, is incestuous cohabitation in another.
Waterman tells us, writing of the criminal statutes of the States, that in making adultery punishable in the common law courts, they do not give a definition of the offence, and that such is frequently the case as to the higher crimes. “ They are not defined in our statute book, *851 but are assumed to be well known as offences at common law; and under the general term denoting the offence, it is declared by law to be a crime, and the mode of trial and measure of punishment are alone prescribed by statute. If questions arise in such cases as to what constitutes the ■offence, recurrence is to be had to well established definitions, sanctioned by books of authority and adopted by long usage, and with reference to which, it may be supposed our legislatures have acted in passing the law punishing the offence.” But he adds, “It so happens, that on the present question (adultery) we derive less aid than usual from the lights of the common law, the crime of adultery not being cognisable by ■the temporal courts in England as a public offence, but only as a private injury, and hence we have not that distinct character of this crime well defined and made familiar to us by the books of common law that will be found to exist in relation to other offences.” Archbold,, Crim. Brae. & PI. notes 615.
That is precisely the difficulty in the present prosecution. And it is not removed by arguing from modern enactments, that they make offences, the injuring or destroying any line of telegraph, or railway, or •stuffing ballot boxes, and that to ascertain their meanings we can not go to the common law, but must understand and construe those words in their ordinary and- usually accepted signification. Injuring a telegraph or railway means the same thing in England that it does in America. Stuffing a ballot box means the same thing in Massachusetts •as in Louisiana. But incest means a totally different thing in each of these places.
We are compelled to discharge the prisoner, and in doing so, we •call the attention of the legislative department of the Government to the defect in the statute, to the end that it may be speedily remedied. It should declare that intermarriage or cohabitation between persons within the degrees of consanguinity within which marriage is unlawful, •constitutes the crime of incest, or such words as are used elsewhere in •other criminal statutes, and which have always been held to be necessary for the proper definition, and punishment of this and crimes which ■like this vary in meaning according to the temper, or religious notions •of different countries. For much curious learning on this matter, vide •Shelford on Marriage and Divorce, 154 et seep, and for computation of degrees, Cooper’s Justinian, notes 422 — 431.
It is therefore ordered and decreed that the judgment of the lower, ■court is avoided and reversed, the verdict of the jury is set aside, and the prisoner is ordered to be discharged from custody.