JAMES E. GRAVES, JR., Circuit
Judge, concurring in part and concurring in the judgment:
I concur in the approach adopted by the majority to determine the generic definition of an enumerated Guidelines offense when that offense is not defined at common law. I also concur in the majority’s conclusion that the term “minor,” as used in “sexual abuse of a minor,” means a person under the age of 18. However, because I am convinced that “statutory rape” is an offense defined at common law, I would find the majority’s “common usage” approach inapplicable in determining its generic definition. Rather, I would hold that, consistent with our precedent, traditional common law offenses must be defined according to the method used in Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), by considering the majority of state criminal codes, the Model Penal Code, treatises, and other sources to derive a majority approach. Using this approach, I would conclude that the generic definition of “statutory rape” includes an age of consent of 16 years. Finally, even under the “common usage” approach, I would conclude that the generic definition of “statutory rape” includes an age of consent of 16 years. The majority’s definition of “statutory rape” is fundamentally flawed because it depends on state law and is therefore not uniform.
Because Rodriguez’s challenge to the definition of the term “minor” fails, he has not shown that the district court erred in determining that his prior conviction under Texas Penal Code § 22.011(a)(2) constitutes “sexual abuse of a minor” and applying a 16-level “crime of violence” enhancement under § 2L1.2. Accordingly, I concur in the judgment of the court.
*570 I. “Statutory rape” as a common law offense
The majority’s adoption of a “common usage” approach for defining enumerated offenses that are undefined at common law is a sensible solution to an intractable problem that has divided and confused federal courts. Unfortunately, the majority negates many of the benefits of such an approach by adopting a needlessly complex method for determining whether an offense is “defined at common law.” Although the crime of statutory rape has existed for over seven hundred years in England, the majority holds that it is not a common law crime because it was created by statute rather than by judges, and because it has no mens rea requirement. These distinctions, in addition to being problematic for other reasons, do not further the central goal.of distinguishing offenses that have no well-known, traditional definition and therefore cannot be defined according to the method used in Taylor. I would hold that any offense recognized under English law prior to 1607 — when the first English colonies were established in America — -is a “common law” offense.
First, it is not even clear that statutory rape was initially created by statute. The earliest reference to statutory rape I have found is in the 1275 Statute of Westminster (3 Edw. 1, c. 13), which provides: “And the King prohibiteth that none do ravish, nor take away by Force, any Maiden within Age (neither by her own Consent, nor without) nor any Wife or Maiden of full Age, nor any Woman against her Will.”[1] Some early statutes, such as the 1275 Statute of Westminster, were seen as largely codifying preexisting common law rather than creating new law. Indeed, forcible rape, which the majority correctly recognizes as a common law crime, is listed in the same sentence as statutory rape in the above statute. This does not mean that it was created by statute; rather, the more plausible inference is that both forcible rape and statutory rape were both prohibited by the common law even before the 1275 Statute of Westminster.
Second, a distinction between judge-created crimes and crimes created by early statute is unworkable. As the discussions in Blackstone’s Commentaries demonstrate, many traditional offenses have been shaped over time by the interplay of court decisions and statutes. For example, among the various types of homicides “committed for the advancement of public justice,” Blackstone lists those set forth in statutes as well as in court opinions. See Blackstone, Commentaries *179-80. Similarly, in the discussion of burglary, Blackstone notes that “[t]he entry may be before the breaking, as well as after: for by statute 12 Ann. c. 7. if a person enters into or is within, the dwelling house of another, without breaking in, either by day or by night, with intent to commit felony, and shall in the night break of the same, this is declared to be burglary.” Id. at *227. Blackstone further describes the ways in which the crime of rape had been modified by statutes, and describes statutory rape as a type of rape. Id. at *211-12.
There is simply no justifiable reason for wading through early English law and attempting to disentangle the judge-created aspects of traditional crimes from the statute-created aspects. In explaining the rationale for adopting the “common usage” approach for non-traditional offenses, the majority explains that “it is difficult, if not impossible, to identify an accurate set of discrete elements that define modern, nontraditional offense categories when those *571 categories do not have a generic structure that is rooted in common law.” First, a crime that is over four hundred years old is hardly “modern” or “non-traditional.” More importantly, it is not generally more difficult to identify a discrete set of elements for traditional offenses with a statutory origin; if anything, it is probably easier.
The majority relies heavily on a discussion in Professor LaFave’s treatise but misunderstands its import. Under the heading: “What the Common Law of Crimes Encompasses in States Retaining Common Law Crimes,” Professor LaFave answers the question: “How does a court determine something [a] defendant has done amounts to a common law crime?” See Wayne R. LaFave, Criminal Law, 2.1(e) (2012). Professor LaFave notes that a “generally used technique ... is to look at books by recognized writers on English crimes, especially Blackstone, to determine the existence and definition of a common law crime.” Id. The majority misinterprets this as a direction to look at whether sources such as Blackstone describe a crime as created through common law, as opposed to statute. However, as the cases cited to illustrate this point demonstrate, courts have not looked to sources such as Blackstone to distinguish common law crimes from non-common law crimes— they have looked to such sources to determine whether some particular conduct is described as criminal. See id. n. 67. No case cited by Professor LaFave or by the majority has parsed sources such as Blackstone to determine whether a crime is described as statutorily created. To clarify any potential confusion, Professor La-Fave’s treatise states in the same section that “[a]n English criminal statute enacted before 1607, if applicable to our conditions, becomes part of our American law.” Wayne R. LaFave, Criminal Law, 2.1(e) (2012).
The majority also holds that statutory rape is not a common law offense because it lacks a mens rea requirement.[2] However, it is not clear what the majority means by the term “statutory rape,” and how it has determined that this offense lacks a mens rea requirement. Certainly the common dictionary definition of “statutory rape” does not say anything about the presence or absence of a mens rea requirement. If the majority is referring to the traditional, common law understanding of statutory rape, this only underscores the point that such a traditional definition exists and can be used as the baseline for a Taylor analysis. If the majority is referring to the dominant contemporary state law definition, or perhaps something else, this only raises further questions and creates additional complexity. The majority seemingly holds that we must first define the elements of an offense (at least partially) in order to determine the standard that will be used to define the offense, and provides no guidance on how such a pre-definition should be determined. This is counterintuitive and convoluted, and does not provide a workable standard that can be applied by courts within our circuit.
Because I conclude that “statutory rape” is an offense defined at common law and therefore “traditional,” I would find the majority’s “common usage” approach inapplicable.
*572 II. Defining “statutory rape” using the Taylor majority-based approach
As the majority notes, most states do not use the label “statutory rape” in their criminal codes. This presents no problem, as we are concerned with the “basic elements” of an offense rather than the “exact definition or label” given by a state. Taylor, 495 U.S. at 599, 110 S.Ct. 2143. More difficulty is presented by the variation among state laws on factors such as the age of consent, the mens rea requirement, the requisite age difference between the perpetrator and the victim, the sexes of the perpetrator and the victim, and the range of sexual conduct prohibited. Nevertheless, these difficulties are by no means insurmountable. Following the guidance of Taylor, courts should use the traditional common law definition of an offense as a baseline and diverge from this definition only when a clear majority of states have done so.
In this case, we need only determine the age of consent in the generic definition of “statutory rape.” As this court found in United States v. Lopez-DeLeon, 513 F.3d 472, 474 (5th Cir.2008), thirty-four states (including the District of Columbia) — two thirds — set the age of consent at sixteen. Both the Model Penal Code and the federal equivalent of statutory rape, 18 U.S.C. § 2243(a), likewise set the age of consent at sixteen. Id. at 474-75. Black’s Law Dictionary states that the age of consent is “usually defined by statute as 16 years.” Id. at 475; Black’s Law Dictionary 70 (9th ed. 2009). Based on this data, I agree with Lopez-DeLeon’s conclusion that the age of consent in the generic definition of “statutory rape” is 16 years.
III. Defining “statutory rape” using the “common usage” approach
Even assuming “statutory rape” is considered to be a “non-traditional” offense, the majority’s application of the “common usage” approach is deficient in several ways. Black’s Law Dictionary defines “statutory rape” as “[ujnlawful sexual intercourse with a person under the age of consent (as defined by statute), regardless of whether it is against that person’s will.” Black’s Law Dictionary 1374 (9th ed. 2009). “Age of consent” is defined as “[t]he age, usu[ally] defined by statute as 16 years, at which a person is legally capable of agreeing to marriage (without parental consent) or to sexual intercourse.” Id. at 70. The majority ignores the clear statement that “age of consent” is usually defined as 16 years, instead focusing on the statement that the age of consent for purposes of statutory rape is “defined by statute.” Based on this language, the majority effectively holds that there is no uniform, generic definition of “statutory rape” — that “statutory rape” means unlawful sexual intercourse with a person below whatever age of consent a state chooses to define.
First, this analysis is incongruous with the majority’s own analysis of the term “minor.” As the majority recognizes, Black’s Law Dictionary defines a “minor” as “[a] person who has not reached full legal age.” Black’s Law Dictionary 1086 (9th ed. 2009). “Legal age” refers to either “age of capacity” or “age of majority.” Id. at 70. “Age of capacity” is defined as “[t]he age, usu[ally] defined by statute as 18 years, at which a person is legally capable of agreeing to a contract, maintaining a lawsuit, or the like.” Id. (emphasis added). “Age of majority” is defined as “[t]he age, usu[ally] defined by statute as 18 years, at which a person attains full legal rights, esp. civil and political rights such as the right to vote.” Id. (emphasis added). The dictionary further states that “[i]n almost all states today, the age of majority is 18.” Id. (emphasis added).
*573 Under the majority’s analysis, if “minor” were defined as “a person who has not reached full legal age (as defined by statute),” its conclusion would be different— that “minor” means a person below whatever age a state defines as “full legal age.” It is unreasonable to allow that so much depends on this parenthetical. As noted above, “full legal age” generally means either “age of capacity” or “age of majority.” Moreover, the definitions provided above further state that both “age of capacity” and “age of majority” are usually defined by statute, and that the age of majority is not 18 in every state. The only real difference is that “legal age” is “usually defined by statute,” whereas “age of consent” is “defined by statute.” Surely the word “usually” should not lead to such a stark difference in interpretation.
Second, and more fundamentally, the majority’s definition of “statutory rape” is anything but “uniform.” Instead, the elements of “statutory rape” would vary from state to state based on state law. As the majority itself recognizes, Taylor instructs us to determine a “uniform definition” for an enumerated enhancement offense. The Supreme Court in Taylor found it “implausible that Congress intended the meaning of ‘burglary’ for purposes of § 924(e) to depend on the definition adopted by the State of conviction.” Taylor v. United States, 495 U.S. 575, 590, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). Here, there is likewise no reason to believe that either Congress or the Sentencing Commission intended for the definition of “statutory rape” in the § 2L1.2 “crime of violence” enhancement to depend on the definition adopted by each state.
Such a definition fits awkwardly into the four-step analysis adopted by the majority. Under this analysis, the third step is to derive the generic meaning of an offense and the fourth step is to “look to the elements of the state statute of conviction and evaluate whether those elements comport with the generic meaning of the enumerated offense category.” The generic definition derived in the third step is to be the yardstick by which the state statute is measured. However, the majority has crafted a yardstick that varies according to what is being measured.[3]
As the majority states, the “common usage” of “statutory rape” denotes sexual intercourse with a person under the age of consent. If we are to derive a generic definition of “statutory rape,” we cannot avoid defining this age of consent in a way that does not depend on state law. I agree with the conclusion reached by the Ninth Circuit: “While it is true that the age of consent may vary according to individual state statutes, the ‘usual’ definition is sixteen years old.” United States v. Rodriguez-Guzman, 506 F.3d 738, 746 (9th Cir.2007).
IV. “Sexual abuse of a minor”
Because Rodriguez takes issue only with the definition of the term “minor,” the court does not consider the meaning of the terms “sexual” and “abuse.” Accordingly, the court does not hold that sexual intercourse between a sixteen-year-old and a nineteen-year-old involving actual consent — which would be prohibited under Texas Penal Code § 22.011(a)(2) — constitutes “sexual abuse.” Because I agree with the majority’s analysis rejecting Rod *574 riguez’s challenge to the definition of the term “minor,” I concur in the judgment of the court.

. According to Sir Edward Coke, the words "within age” meant below the age of consent to marriage, which was 12 years. See Mortimer Levine, A More than Ordinary Case of "RapeT 13 and 14 Elizabeth I, 7 Am. J. Legal Hist. 159, 162-63 (1963).

. The Ninth Circuit, which held that statutory rape is not a "traditional” common law offense because it lacks a mens rea requirement, at least acknowledged that statutory rape is a common law offense. United States v. Gomez-Mendez, 486 F.3d 599, 602 n. 4 (9th Cir.2007); United States v. Brooks, 841 F.2d 268, 269 (9th Cir.1988) (per curiam) ("Despite its statutory heritage, the offense [of statutory rape] is generally considered an extension of the common law crime of forcible rape and is itself old enough to be a part of the common law of this country.”) (emphasis added).

. Although a definition based on "common usage” differs in some ways from a Taylor-type definition that sets forth the elements of a single offense, it can and must still be uniform. For example, with respect to “sexual abuse of a minor,” the words "sexual,” “abuse,” and "minor” can be defined according to common usage. Although many different state crimes may fall into the category because they involve sexually abusive conduct toward a minor, the definitions of the words remain the same and serve as a fixed yardstick by which to measure the state offenses.