**People of the State of Illinois, Plaintiff-Appellee, v. Robert S. Hines, et al., Defendants-Appellants.**

**Gen. Nos. 50,522–50,524.**

First District, First Division.

September 25, 1967.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Thomas J. Farrell, Frederick F. Cohn, and James J. Doherty, Assistant Public Defenders, of counsel), for appellants.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Truman Larrey, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

The defendants were jointly indicted for the crime of burglary and after a plea of not guilty they were tried and found guilty by a jury. They were sentenced to terms in the Illinois State Penitentiary as follows: Willie S. Terry, 6 to 10 years; Robert S. Hines, 4 to 10 years; and Henry R. Clay, 4 to 10 years. The defendants appeal and contend (1) that the court erred in admitting evidence of a lie detector test, and (2) that the court erred in admitting evidence of incompetent and prejudicial matter.

The record indicates that upon the opening of the beauty shop at 4309 South Berkeley, at 8:30 a. m. on June 13, 1964, an employee found the premises were burglarized and an electric stove, irons, hair oil, dyes, spools of thread, a hair dryer and other items were missing. A next door neighbor testified that at 12:30 a. m. she heard a noise, saw a light go on and off inside the back of the beauty shop and saw defendants, Hines and Terry, whom she knew, coming from the rear of the beauty shop carrying shopping bags. Another resident residing two doors from the shop testified that she saw defendant Clay who was carrying a hair dryer, enter a cab about 12:30 a. m. on the morning in question and defendant Terry carrying a bag enter the same cab. A third neighbor testified that he saw Hines, Terry and Clay and another man with two bags which contained items identical to those of the burglarized store.

284

The defendants, Hines and Clay, denied participation in the burglary. Upon direct examination defense counsel asked defendant Hines about a previous felony conviction and he admitted that he was convicted of possession of narcotics on May 27, 1957, and had served 21 months in the penitentiary. On cross-examination by the prosecutor the following occurred:

Q. In 1957 you were convicted of possession of narcotics, is that right?

A. Yes, I was.

Q. Were you addicted to narcotics at that time?

A. Yes, I was.

Q. And do you still use narcotics?

A. No.

Mr. Nelson: Objection. That is not relevant to this cause.

Mr. Martwick: Oh, Judge—

The Court: It affects his credibility. He may ask it.

Mr. Martwick: Q. What type narcotics were you addicted to?

Mr. Nelson: We object to this now. He just asked if he was addicted and he has answered.

The Court: He may ask.

Mr. Martwick: Q. What type narcotics were you addicted to?

A. Heroin.

Q. What type habit did you have in 1957?

A. It was small.

Q. When you say "small" how much were you using a day?

Mr. Nelson: We object to that. He has gone into that. That is objectionable, it has to be.

The Court: That is enough to establish that in 1957.

Mr. Martwick: How about in 1964, did you use any narcotics?

A. No, I didn't.

Mr. Nelson: I object to that. There is no testimony about that.

The Court: Objection overruled. I have said he may question him as to his addiction, if any, because it goes to the credibility, and you know that.

Mr. Martwick: Q. When was the last time you used heroin?

Mr. Nelson: Judge, we object to that now. There is no establishing whether he did it and he has no right to ask this question and he knows it.

The Court: He may answer.

The Witness: The last time was in 1960.

Mr. Martwick: Q. 1960?

A. I think so.

Q. In 1960 did you have a habit?

A. No.

Q. How much narcotics did you use during the year 1960?

A. I couldn't give no figure of how much I was using.

Q. Were you spending a hundred dollars a day on heroin?

A. No.

Mr. Nelson: I object to this.

Mr. Martwick: Judge, narcotics addiction goes to the credibility.

The Court: Strike the reference to $100 a day.

Mr. Martwick: Q. Well, how big a habit did you have?

A. It wasn't $100.

Q. How big was it?

A. It didn't exceed over 5.

Q. $5.00 a day?

A. No, not a day.

Q. How often would you use it?

A. Once every two weeks.

Q. Once every two weeks you used heroin?

A. Yes.

Q. Since 1960 until you were arrested in 1964, you have never touched heroin?

A. No.

Q. In 1960 what neighborhood did you live in?

A. On 42nd and Greenwood.

Q. In 1964 you still lived there, is that right?

A. Yes, sir.

Q. From 1960 to 1964, you just kicked the habit, is that right?

A. Yes, sir.

Mr. Martwick: Fine. Thank you.

Mr. Nelson: No further questions, Your Honor.

 The State argues that as defense counsel opened the door to defendant's conviction he is in no position to complain. We do not agree. In Illinois, when the defendant testifies in his own behalf, prior convictions of infamous crimes can be introduced by the State for the purpose of impeachment and the jury is instructed that such evidence is shown only for the purpose of affecting credibility. The defendant's counsel only brought out the conviction knowing full well that the State would offer a certified copy of this conviction if he didn't, but this maneuver does not open the door to the prejudicial cross-examination that took place. Cross-examination on crimes other than the one for which the defendant is on trial is allowed only where its relevancy is so closely connected with the main issue as to justify admission, which is not the situation here. People v. Cage, 34 Ill2d 530, 216 NE2d 805. In our judgment this rule should not be extended along the lines of the cross-examination which took place here. A defendant's guilt must be established by legal and competent evidence, uninfluenced by bias raised by irrelevant evidence which serves only to prejudice him in the eyes of the jury.

In People v. Crump, 5 Ill2d 251, 125 NE2d 615, cited by the State, the defendant was charged with murder. The question there was whether a state's accomplice witness could be properly cross-examined by the defense as to drug addiction for the purpose of impeaching his credibility. The Supreme Court stated that particularly in a murder charge where the jury fixed the punishment the

jury was entitled to know whether the witness was or had been a drug addict or had used narcotics on the day of the alleged crime, and the refusal of the court to permit such cross-examination by defense counsel was prejudicial and reversible error. The Court commented that in People v. Bond, 281 Ill 490, 118 NE 14, the court held that evidence must be admitted if it tended to prove a substantial ground to lessen the punishment and reduce it below the maximum punishment fixed for murder. And in People v. McElroy, 30 Ill2d 286, 196 NE2d 651, the defendant was charged with selling narcotics and on direct examination by his own attorney he testified that he was not using narcotics at the time of his arrest and that he had never used narcotics. It was there held that cross-examination concerning his drug addiction had been opened by defense inquiry and therefor the defendant was in no position to complain.

In the case at bar the defendant would not have brought out his prior conviction if the rule in Illinois did not permit the State to do so. Generally, this type of evidence should be restricted to the instruction given by the court which is adequate to bring to the attention of the jury that it may affect the credibility of the witness. The prosecutor, not satisfied with his general cross-examination on this subject, brought to the attention of the jury the details of the conviction and the amount of money needed by the defendant to daily purchase narcotics from 1957 to 1960. The evidence solicited by the prosecutor as to defendant's conduct in prior years bears no relevant relationship to the issue in dispute, but tended only to improperly prejudice the defendant in the eyes of the jury. This examination was an obvious attempt to prejudice the jury and impress them with the fact that defendant might have a present need for money to purchase narcotics and therefor he was more likely to have committed the crime charged. This type of cross-exami-

nation is, in our judgment, both incompetent and prejudicial. People v. Donaldson, 8 Ill2d 510, 134 NE2d 776.

■ We also conclude that the trial judge erred in permitting evidence in regard to a lie detector test and in permitting the prosecutor to refer to it in his argument to the jury. No claim was made by either side that Clay took a lie detector test. In direct examination of a police officer by the prosecutor it was improperly brought out that Clay was questioned in the polygraph section of the crime laboratory. In final argument the prosecutor compounded this prejudicial error by arguing that:

> Sure, he [Clay] said why didn't he sign the statement to that effect. A person would much rather sign a statement saying he didn't do it than putting in writing he did do it. Naturally, you are reluctant to sign that and Officer Thompson isn't in the police department to take written statements, he is there to perform lie detector tests. And he didn't perform one after Mr. Terry—excuse me, after Mr. Clay told him what happened.

We have examined the cases cited by the State on this issue and find that they are distinguishable on the facts and we need not go into detail.

Because of the aforementioned errors the defendants are entitled to a new trial. The judgment of the Criminal Division of the Circuit Court is reversed and the cause is remanded for a new trial.

Reversed and remanded with directions.

MURPHY, P. J. and ADESKO, J., concur.