535 A.2d 459

**Jack Ellwood WICKS**

v.

**STATE of Maryland.**

**No. 4, Sept. Term, 1987.**

Court of Appeals of Maryland.

Jan. 7, 1988.

Gary S. Offutt, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Mary Ellen Barbera, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore City, Warren B. Duckett, Jr., State's Atty. for Anne Arundel County and Philip T. Caroom, Asst. State's Atty., Annapolis, on the brief), for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH,* McAULIFFE and ADKINS, JJ.

COLE, Judge.

In this case we shall decide whether the trial judge had the discretion to exclude the defendant's prior petit larceny conviction for impeachment purposes.

Jack Ellwood Wicks was indicted in the Circuit Court for. Anne Arundel County for sexual child abuse, assault, as-

---

* Couch, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

sault and battery, and third degree sexual offense. At trial, defense counsel moved *in limine* to exclude Wicks's 35–year–old petit larceny conviction for impeachment purposes. The trial judge denied the motion, concluding that larceny, even petit, is an infamous crime, and that a witness's conviction for an infamous crime is admissible without reference to its age. On cross-examination, the State asked Wicks if he had ever been convicted of larceny and Wicks answered affirmatively. The jury found Wicks guilty of sexual child abuse, third degree sexual offense, and battery. Wicks appealed to the Court of Special Appeals, but we granted certiorari prior to argument in the intermediate appellate court.

On appeal, Wicks argues that the trial court erred when it concluded that it had no choice but to allow the State to impeach Wicks's testimony with his prior petit larceny conviction. Wicks contends that the trial court had the discretion to exclude his prior conviction because petit larceny is not an infamous crime and, even if petit larceny is an infamous crime, the trial court had the discretion to exclude the evidence because of its remoteness. The State maintains that petit larceny is an infamous crime and that infamous crimes are admissible for impeachment purposes without reference to their age. We agree with the State and explain.

In Maryland, a trial judge's discretion to determine the admissibility of crimes that have been offered for impeachment purposes is limited by Maryland Code (1974, 1984 Repl. Vol.), § 10–905 of the Courts and Judicial Proceedings Article. Section 10–905 provides that "[e]vidence is admissible to prove the ... fact of [a witness's] conviction of an infamous crime." This statute deprives the trial court of discretion to determine the admissibility of infamous crimes by making infamous crimes automatically admissible for impeachment purposes. *Prout v. State*, 311 Md. 348, 535 A.2d 445 (1988). Thus, under the statute, the trial court's discretion to exclude prior convictions offered for impeachment purposes is limited to non-infamous crimes.

■ We recently discussed impeachment by prior conviction in *Prout.* In that case we considered whether the trial judge erred in excluding the prosecuting witness's prostitution and solicitation convictions when they were offered to impeach her testimony. We held that the trial judge had the discretion to determine the admissibility of the witness's prior convictions because prostitution and solicitation were not "infamous" crimes within the meaning of § 10–905. In reaching this conclusion we traced the roots of the statute to 1864, where we found Maryland's first statute on impeachment by prior conviction to be substantively identical to its modern counterpart. *Prout,* 535 A.2d at 450. In considering the purpose of the 1864 enactment, we discovered that its function was to ameliorate the harsh common law rule which disqualified those individuals convicted of infamous crimes from testifying in judicial proceedings. The 1864 legislation presented a more lenient rule by allowing these witnesses to testify subject only to impeachment by their prior infamous convictions. *Id.* 535 A.2d at 450. Thus, in *Prout,* we concluded that "infamous" as it is used in § 10–905 is intended to describe only a narrow class of crimes that rendered an individual incompetent to testify at common law. *Id.* 535 A.2d at 450. We also recognized that these crimes were treason, the common law felonies, and the *crimen falsi. Id.* 535 A.2d at 450–451; *Garitee v. Bond,* 102 Md. 379, 383, 62 A. 631, 633 (1905). Accordingly, the question we must now decide is whether petit larceny is treason, a felony, or *crimen falsi,* and thus an infamous crime that rendered a person incompetent to testify at common law.[1] If it is, then the trial judge was correct in concluding that he had no discretion under § 10–905 to exclude Wicks's prior petit larceny conviction.

■ Larceny was one of the first crimes recognized by the common law, 2 J. Turner, *Russell on Crime* 1000 (11th ed. 1985), and was divided into petit and grand by statute in

---

**1.** It is evident that petit larceny was not a form of treason at common law and we shall discuss this point no further.

1275. *Statute of Westminster* I, 3 Edw. 1, c. 15 (1275). That division, much like the one today, was based on the value of the goods stolen. If the value of the goods was twelve pence or less, the theft was classified as petit larceny and the punishment was forfeiture of goods and whipping.[2] If the value of the goods was greater than twelve pence, the offense was classified as grand larceny and was punishable by death. 3 W. Holdsworth, *A History of the English Law* 366 (1966); R. Perkins & R. Boyce, *Criminal Law* 335 (3d ed. 1982); S. Rapalje, *A Treatise on the Law of Larceny* § 13, at 13 (1892); 3 *Wharton's Criminal Law* § 356, at 309 (C. Torcia, 14th ed. 1980); 50 Am.Jur. 2d *Larceny* § 44 (1970); 52A C.J.S. *Larceny* § 60(1) (1968). However, all larceny, whether petit or grand, was considered to be a felony. R. Perkins & R. Boyce, *supra,* at 335; *Wharton's Criminal Law, supra,* § 356, at 309; 50 Am.Jur.2d *Larceny, supra,* § 44, at 208.[3]

In 1809, the legislature divided larceny into simple and petit at the amount of five dollars and assigned different punishments to each offense. Chapter 138 of the Laws of 1809. Nevertheless, each offense remained a felony. Thus, in 1864 when § 10–905's predecessor was enacted, petit larceny was a felony and thus an infamous crime that was admissible for impeachment purposes under the statute. By Chapter 78 of the Laws of 1933, the legislature changed the amount dividing petit and grand larceny from five dollars to twenty-five dollars and made larceny under the value of twenty-five dollars a misdemeanor.

---

**2.** In the late 1700's, in Massachusetts, 12 pence would buy a pound of starch. Eleven pence would buy a pound of coffee or ham, and ten pence would buy a bushel of apples. M. Maulhall, *Dictionary of Statistics* 488 (4th ed. 1899 & republished 1969).

**3.** This explains the fact that larceny is virtually always listed among those offenses that were felonies at common law without a distinction being made between petit and grand larceny. 3 Op.Atty.Gen. 86 (1918); Ginsberg & Ginsberg, *Criminal Law and Procedure in Maryland* 6–7 (1940); R. Perkins & R. Boyce, *supra,* at 14; 1 *Wharton's Criminal Law, supra,* § 17, at 81.

The General Assembly's reclassification of petit larceny from a felony to a misdemeanor manifests its intention that a person convicted of petit larceny not be made to suffer the consequences that flow from a felony conviction.

However, this legislation did not change its status under § 10–905 which determined an infamous crime to be a conviction which rendered an individual incompetent to testify at common law. Thus, although petit larceny is now a misdemeanor, it was clearly a felony at common law and "infamous" within the meaning of § 10–905. The trial judge was therefore correct in concluding he had no discretion to exclude this prior conviction when offered for impeachment purposes.

Nonetheless, even if we were to conclude (which we do not) that the change of petit larceny to a misdemeanor prevents its use for impeachment because it was no longer a felony, the result here would be the same.

Infamous crimes at common law also included the *crimen falsi*. *Prout*, 535 A.2d at 451; *Garitee v. Bond*, 102 Md. 379, 383, 62 A. 631, 633 (1905). Therefore, if petit larceny is a *crimen falsi* it is admissible under § 10–905 without regard to whether it was, or is currently, a felony or a misdemeanor. Thus, the question to which we now turn is whether petit larceny is a *crimen falsi*. We conclude that it is.

Crimes historically classified as *crimen falsi* include crimes in the nature of perjury or subornation of perjury, false statement, criminal fraud, embezzlement, false pretense, or any other offense involving some element of deceitfulness, untruthfulness, or falsification bearing on the witness's propensity to testify truthfully. *Black's Law Dictionary* 335 (5th ed. 1979) (citation omitted). We find that theft, in any amount, is the embodiment of deceitfulness. Thus, in applying the above definition to petit larceny, we cannot avoid the conclusion that petit larceny is a *crimen falsi* and, thus, an infamous crime within the meaning of § 10–905. Our conclusion is buttressed by the fact

that the General Assembly has labelled theft as an infamous crime, a conviction which renders an individual ineligible to vote in this State. Maryland Code (1957, 1986 Repl. Vol.), Art. 33, § 3–4(c).[4]

▮▮▮▮ Wicks further argues that, even if petit larceny is an infamous crime within the meaning of § 10–905, the trial judge still had the discretion to exclude evidence of his prior conviction if he determined that it was too remote, or if he concluded that its probative value was outweighed by its prejudicial effect. However, this Court has previously held that "where [a] prior conviction [is] for an infamous crime, evidence of it is admissible without reference to the time of its commission, for such bearing and weight on credibility as the trier of fact may give it under the circumstances." *Cousins v. State*, 230 Md. 2, 4–5, 185 A.2d 488, 489 (1962) (footnote omitted). Thus, the fact that an infamous crime is remote does not negate its admissibility under § 10–905; it is admissible for impeachment purposes irrespective of its age. Moreover, it is only when a prior conviction is for a *non*-infamous offense that the trial judge has the discretion to balance its probative value against its prejudicial effect in determining its admissibility. *Prout*, 535 A.2d at 452. When a conviction is for an infamous crime it is admissible under § 10–905 without regard to its prejudicial effect. *Ricketts v. State*, 291 Md. 701, 708, 436 A.2d 906, 910 (1981). Accordingly, Wicks's argument that the trial court had the discretion to exclude his prior petit larceny conviction either because it was too remote or prejudicial must fail.

Wicks further argues that our holding will lead to absurd results. He claims that it is absurd that a person convicted of larceny of a candy bar at age 18 may be impeached with

---

4. Section 3–4(c) provides that "[n]o person shall be registered as a qualified voter if he has been convicted of *theft or other infamous crime,* unless he has been pardoned, or, in connection with his first such conviction only, he has completed any sentence imposed...." (emphasis supplied).

that conviction 50 years later. This may be, but such a conviction had an even greater effect at common law, where an individual who was convicted of stealing an item worth twelve pence or less was disqualified from being a witness in a judicial proceeding for the remainder of his life. In 1864, when the General Assembly enacted Maryland's impeachment statute, the General Assembly made a legislative determination that an infamous conviction, rather than disqualifying an individual from testifying, would be admissible to impeach his credibility. If trial courts are to be vested with the discretion to exclude a witness's prior infamous conviction when it is too remote or prejudicial, that result must be achieved through legislative abrogation of the 1864 directive, or by exercise of our rule-making power,[5] not through adjudication. Under the circumstances, the trial court had no discretion to exclude the prior conviction and thus its admission was entirely proper.

JUDGMENT AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.

McAULIFFE, Judge, concurring.

I concur in the result, but I would hold the misdemeanor of theft to be an infamous crime only because it is a *crimen falsi*. In recognition of established precedent, and in the absence of a constitutionally grounded objection, I concur with the holding that the trial judge may not exclude evidence of a previous conviction of an infamous crime even though its potential for improper prejudice outweighs its probative value.

---

5. See Md. Const. (1981 Repl.Vol.), Art. IV, § 18(a), and Md.Code (1974, 1984 Repl.Vol.), § 1–201(a) of the Courts and Judicial Proceedings Article. The statute directs liberal construction of our rule-making power and explains that the power includes, among other things, "the admissibility of evidence in all cases, including criminal cases." The area of law addressed in this opinion would appear to be an appropriate one for consideration by the Rules Committee. *See, e.g., Ricketts v. State,* 291 Md. 701, 703–705, 436 A.2d 906, 907–909 (1981); *Burrell v. State,* 42 Md.App. 130, 399 A.2d 1354 (1979); 3 J. Weinstein and M. Berger, *Weinstein's Evidence,* Ch. 609 (1987).